IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JEANETTE BALLEW, SHANNON**
**STEPHENSON, DEBBIE ROBINSON** and
**BEATRICE MADRID**,
   Plaintiffs,

vs.                      No. CIV 11-749 JP/WPL

**WAL-MART STORES EAST, L.P.**
   Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant, Wal-Mart Stores East, L.P., filed a MOTION FOR SUMMARY JUDGMENT (Doc. No. 38) ("Motion for Summary Judgment"). Defendant contends that no issue of material fact exists between the parties, and that the evidence in the record demonstrates that Defendant is entitled to judgment as a matter of law on Plaintiffs' claims. On November 30, 2012, the Court held a pretrial conference on the record and permitted the parties to make arguments related to the Motion for Summary Judgment. Attorney C. Barry Crutchfield represented Plaintiffs, and attorney Charlotte Lamont represented Defendant. The Court has considered the record in this case, the parties' arguments, and the relevant law, and concludes that Defendants' Motion for Summary Judgment should be denied because of the presence of disputed issues of material fact.

## BACKGROUND

The Court will view the facts in the light most favorable to Plaintiffs, the nonmoving parties. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1189 (10th Cir. 2000). Plaintiffs Jeanette Ballew[1], Shannon Stephenson, Debbie Robinson, and Beatrice Madrid filed

---

[1] Plaintiff Jeanette Ballew now uses the surname Stroud. Because she is still listed in the caption and is generally referred to by the parties with the surname Ballew, the Court will also use that surname in referring to her.

their COMPLAINT FOR WRONGFUL TERMINATION AND DAMAGES (Doc. No. 1-1) ("Complaint") on July 11, 2011, in the Fifth Judicial District, Eddy County. The Complaint includes claims of wrongful discharge and seeks damages for financial harm.[2] *See* Complaint at 3. Plaintiffs formerly worked at Defendant's store in Carlsbad, New Mexico, but their positions were terminated in January, 2010. *See id* at 1. In terminating Plaintiffs' positions, Defendant's Carlsbad store manager told Plaintiffs that the reason was Plaintiffs' violation of Wal-Mart policy against store employees (other than truck drivers) cashing their own or other employees' personal and payroll checks in the store's "cash office." *See id.* at 2.

Plaintiffs assert that they and other employees had cashed checks in the cash office "for years, and no one had ever attempted to prohibit this check cashing." *Id.* at 2; Plaintiffs' Exhibit A to Doc. No. 55 ("Stroud Depo.") at 20-21; Plaintiffs' Exhibit B to Doc. No. 55 ("Stephenson Depo.") at 18-19; Plaintiffs' Exhibit C to Doc. No. 55 ("Robinson Depo.") at 8; Plaintiffs' Exhibit D to Doc. No. 55 ("Madrid Depo.") at 15-16. Plaintiffs contend that they knew of no contrary store policy until about a week before their positions were terminated, when a fellow employee left a sticky note for Plaintiffs, telling them that the store manager had said that they should no longer cash store employees' personal checks in the cash office. *See* Robinson Depo. at 8; Madrid Depo. at 16-17. Plaintiffs complied with this instruction, but Defendant nonetheless terminated their positions for cashing checks previously. Robinson Depo. at 8.

Plaintiffs' job terminations were effective immediately. *See* Complaint at 1. Plaintiffs argue, however, that they expected that Defendant's progressive discipline policy ("the Policy")

---

[2]Plaintiffs' Complaint also included claims of retaliatory discharge and sought punitive and emotional distress damages. Plaintiffs subsequently decided not to pursue the claims of retaliatory discharge or damages other than for financial harm. *See* RESPONSE TO MOTION FOR SUMMARY JUDGMENT (Doc. No. 55) at 5. Because Plaintiffs have dropped these claims, the Court does not address them in this MEMORANDUM OPINION AND ORDER.

would apply to them because of its consistent application with other employees in the store, and that the result in this case if Defendant had used the Policy would have been less drastic than immediate termination. *See* Response at 9. The Policy's steps progress from verbal to written warnings and then to "Decision Making Day." Exhibit K to Doc. No. 55. Defendant reserves immediate termination as an option for "serious" misconduct, which includes "[t]heft, fraud . . . or other action involving financial integrity." *Id.* Plaintiffs assert that, while they knew that their employment was at-will, they believed that they would be disciplined under one of the steps in the Policy, rather than being immediately terminated, unless they engaged in really egregious behavior. *See* Exhibit G to Doc. No. 55 ("Robinson Aff."); Exhibit H to Doc. No. 55 ("Stroud Aff."); Exhibit I to Doc. No. 55 ("Madrid Aff."); Exhibit J to Doc. No. 55 ("Stephenson Aff.").[3]

Defendant disputes Plaintiffs' claim that it was accepted practice for store employees to cash personal checks in the Carlsbad store's cash office. Reply at 3. In Defendant's version of the facts, Plaintiffs received training in 2008 about not cashing such checks, and they were supposed to be disciplined under the Policy for having done so prior to that time. *See* Reply at 4, 10; PRETRIAL ORDER (Doc. No. 59) at 6. Defendant also notes that Plaintiffs' jobs required them to be intimately familiar with a guidebook that included the rule that Defendant says Plaintiffs violated. *See* Reply at 5. Finally, Defendant contends that since Plaintiffs were at-will employees, Defendant was not obligated to abide by the Policy when it terminated Plaintiffs' positions. *See* Reply at 10. But Defendant also argues that since the reason for the termination of Plaintiffs' positions was concern over financial integrity (i.e., improper check cashing), Defendant did in

---

[3]Defendant objects to the admissibility of the affidavits submitted by Plaintiffs with the Response. *See* REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 57) ("Reply") at 7. As discussed below, the Court has considered Defendant's argument but concludes that the affidavits should be admitted.

3

fact follow the Policy, since immediate termination was proper under the Policy's provision reserving that possibility in cases of "serious" misconduct. Motion for Summary Judgment at 6.

## DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the initial burden" of showing the absence of a genuine dispute of material fact. *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to" the nonmovant. *Majors v. Big Lots Stores*, 2012 WL 4761392 at *2 (10th Cir. 2012) (citing *Anderson,* 477 U.S. at 255; *McWilliams v. Jefferson County,* 463 F.3d 1113, 1116 (10th Cir. 2006). But if the movant meets its initial burden, the nonmovant must then set forth specific facts to show that there is a genuine dispute. *See Anderson*, 477 U.S. at 248-50; *Ford v. Pryor*, 552 F.3d 1174, 1177-78 (10th Cir. 2008) (providing that the nonmovant "must present more than a scintilla of evidence"). This Court's function in the process is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

### B.  Admissibility of Plaintiffs' Affidavits

Defendant argues that Plaintiffs' newly-submitted affidavits "inappropriately attempt[] to backtrack on their sworn deposition testimony" because the affidavits "contain statements contradicting their prior sworn testimony." Reply at 7. Defendant asks the Court to "disregard

Plaintiffs' affidavits in considering the propriety of summary judgment" because, in Defendant's view, the affidavits create "sham fact issues." *Id.* at 8. Defendant believes that all the factors listed by the Tenth Circuit in *Franks v. Nimmo* weigh in favor of the Court excluding Plaintiffs' affidavits. *See id.* at 7-8 (citing 796 F.2d 1230 (1986)). The test instructs courts to examine three factors: "[1] whether the affiant was cross-examined during his earlier testimony, [2] whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and [3] whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Franks*, 796 F.2d at 1237 (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364-65 (8th Cir. 1983); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

     Defendant argues that all three factors indicate that the affidavits are an attempt to create a "sham" issue of fact: first, Plaintiffs' earlier testimony was elicited in depositions where they were essentially subject to cross-examination; second, their breach of implied contract claim is based on evidence they had at the time of the earlier testimony (i.e., their understanding of Defendant's discipline policy), and third, their affidavits do not refer to their deposition statements, which Defendant says were both unequivocal and contrary to what they say in the affidavits. *See* Reply at 8. The Court disagrees, and will not exclude the affidavits. To begin with, the affidavits are not actually contrary to the prior testimony. Plaintiffs did not say in their depositions whether they relied on the Policy; they only indicated that they understood its terms generally and the basic at-will nature of their employment. *See* Exhibits D-G to Doc. No. 38. The affidavits are better characterized as complementary, not contradictory, to Plaintiffs' prior testimony; Plaintiffs' deposition testimony was hardly so complete and unequivocal as to not be susceptible to further clarification, which the affidavits provide. When the affidavits are viewed in this light, *Franks*' other factors' contrary indications have less weight. The Court thus declines Defendant's request to exclude the affidavits from consideration of this motion.

**C.     Application of Summary Judgment Standard**

The parties' filings demonstrate that numerous disputed facts exist in this case that are material to a determination of whether Plaintiffs' discharge was wrongful. A jury verdict could turn on whether Plaintiffs had an implied contract with Defendant requiring Defendant to use the disciplinary steps outlined in the Policy, as well as on whether Plaintiffs' conduct was "serious" enough to warrant immediate termination. Therefore, summary judgment is not appropriate.

Areas of genuine dispute of material facts include the following. Defendant maintains that it "does not have a 'four-step progressive discipline policy'" and that "Defendant reserves the right to choose the most appropriate level [of discipline], including immediate termination." Motion for Summary Judgment at 3. Plaintiffs show the dispute on the issue by pointing to a fellow employee's testimony that the Carlsbad store used the Policy's steps "99% of the time," with exceptions in cases of workplace drunkenness or sexual harassment. *See* Exhibit L to Doc. No. 55 ("Heines Depo.") at 14. A Wal-Mart manager also testified that discipline via steps under the Policy would be appropriate for Plaintiffs' infractions, rather than immediate termination, in a situation where Plaintiffs were not aware of the Policy and had not been disciplined before. *See* Exhibit N to Doc. No. 55 ("Smith Depo.") at 9-10. Furthermore, Plaintiffs' affidavits indicate that they believed that the Policy would apply to them if they were disciplined. *See* Robinson Depo. at 2; Stroud Depo. at 1; Madrid Depo. at 2; Stephenson Depo. at 1.

Defendant denies that it was common practice for store employees to cash personal checks in the cash office, at least since 2008. Reply at 4 (citing Smith Depo. at 11). Plaintiffs counter this position by pointing to their affidavits indicating that it was a common practice, as well as to testimony by other store employees that until just before Plaintiffs' positions were terminated, everyone in the store thought it was acceptable to cash personal checks in the cash office. *See* Robinson Aff. at 1; Stroud Aff. at 1; Madrid Aff. at 1; Stephenson Aff. at 1; Heines Depo. at 9; Exhibit E to Doc. No. 55 (Deposition of Bobby Smith) at 7-8. Finally, Defendant

6

maintains that Plaintiffs were trained about the check cashing policy by two other Wal-Mart managers, so that Plaintiffs were on notice about the rule as early as 2008, not just in January 2010 when they received the Post-It note. *See* Reply at 4; Smith Depo. at 10; Response at 6 (quoting Defendant's answer to Interrogatory #4, that "Janice Fite trained Plaintiffs on the check cashing policies FG303 and FG303A."). Plaintiffs, however, claim that they never had any such training. *See* Response at 6. They all testified that they did not hear of a policy against cashing checks in the cash office until they found the co-worker's Post-It note. *See* Exhibit E to Doc. No. 38-1 ("Stroud Depo. Part B") at 74; Stephenson Depo. at 20; Robinson Depo. at 8; Madrid Depo. at 16-17. The co-worker also testified that before she wrote the Post-It note saying not to cash checks in the cash office anymore, she believed that "it was permissible to cash checks through the cash office." Heines Depo. at 9. Furthermore, Plaintiffs present an affidavit from Janice Fite saying that she knew of no policy prohibiting store employees from cashing personal checks in the cash office, and she was "confident [she] would have known of such policy had it existed." Exhibit O to Doc. No. 55 at 1. Ms. Fite also stated flatly that she "never ever attempted to tell any of these ladies not to cash checks" since she did not know it was prohibited. *Id.*

## CONCLUSION

The factual disputes described above are the very type of disputes for which our system of justice provides jury trials. Thus, summary judgment is inappropriate and will be denied.

**IT IS ORDERED THAT** DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 38) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE